UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| JEFF FISHER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| V. | : | CASE NO. 3:03-CV-2183 (RNC) |
| | : | |
| MYRA HELT, GEORGE DOYLE, | : | |
| | : | |
| Defendants. | : | |

RULING AND ORDER

_____Plaintiff, an employee of the Connecticut Department of
Children and Families (DCF), brings this action pursuant to 42
U.S.C. § 1983 against his former supervisors contending that he
was transferred from DCF's Torrington office to its Waterbury
office in retaliation for exercising his First Amendment right as
a citizen to speak on matters of public concern.  Both defendants
have moved for summary judgment.  In response to the motion,
plaintiff has admitted that Helt had no involvement in the
transfer decision, so the claim against her necessarily fails.[1]
With regard to the claim against defendant Doyle, the evidence in
the record is insufficient to support a reasonable inference of
retaliatory motive.  Accordingly, the motion for summary judgment
is granted.

---

[1]  See Pl.'s L. Rule 56(a)(2) Statement ¶ 32 (admitting that
Helt had no involvement in, or input into, the transfer
decision).

1

I.   <u>Facts</u>

The summary judgment record, viewed fully and most favorably to the plaintiff, would permit a jury to find the following facts.  Plaintiff began working for DCF in 1998.  (Estrella Aff. ¶ 4.)  He was promoted to the position of social worker effective September 1998.  (Estrella Aff. ¶ 6.)  Pursuant to a settlement agreement stemming from discrimination claims, he was transferred from DCF's Hartford office to its Torrington office in November 1999.  (Estrella Aff. ¶ 7.)  His responsibilities in Torrington included adolescent services, protective services, and family with service needs (FWSN) cases.  (Estrella Aff. ¶ 7.)  Defendant Helt was the Program Supervisor in Torrington.  (Helt Aff. ¶¶ 3-4.)  She was not plaintiff's immediate supervisor.  (Helt Aff. ¶ 5.)  Defendant Doyle was the Program Director for Torrington.  (Doyle Aff. ¶ 3.)  In April 2002, Doyle became Acting Regional Supervisor, and he was promoted to Regional Administrator in November 2002.  (Doyle Aff. ¶ 3.)

Plaintiff's retaliation claim is premised on three communications he made to persons outside DCF in connection with matters he was working on at the time.[2]  All three occurred

_____

[2]   The details of these communications are under seal. Because I conclude that plaintiff has failed to prove retaliatory motive, it is unnecessary to discuss at length the content and context of these communications.

within his first year in the Torrington office.  (Fisher Dep. 128.)  On one occasion, he disagreed with a youth's treatment program and intended to file a statement with the court to that effect.  (Fisher Aff. ¶ 16.)  After his supervisor and Helt revised his statement, he provided his original draft to the youth's public defender.  (Fisher Aff. ¶¶ 16-17.)  Helt reprimanded him (Fisher Aff. ¶ 14) and said the youth should not have been told to talk to his lawyer (Fisher Dep. 46).

On another occasion, Helt denied plaintiff's request for a car to take a youth to a hearing.  The youth had not been subpoenaed but plaintiff believed it was in the youth's interest to attend.  (Fisher Aff. ¶ 26; Helt Aff. ¶ 15.)  Plaintiff informed the court of Helt's action.  (Fisher Dep. 114.)

The third occasion involved plaintiff's concerns regarding a foster father.  After plaintiff's concerns were dismissed by his supervisors, he reported his concerns to the DCF hotline and the probate court.  (Fisher Aff. ¶¶ 19-23; Fisher Dep. 121.)[3]

Fisher does not recall informing Doyle of the three incidents outlined above, but as his problems with Helt worsened, he sent Doyle copies of email communications with her.  (Fisher Dep. 131.)

In September 2000, plaintiff's immediate supervisor rated

---

[3]   Plaintiff's deposition describes the situation prompting his call to the hotline differently.  (See Fisher Dep. 119-21.) This difference is immaterial to resolution of the case.

his performance as "satisfactory."  (Helt Aff. ¶ 7.)  His ratings
in 2001 and 2002 were "good" and "satisfactory," respectively.
(Helt Aff. ¶ 7.)  Both defendants signed off on these
evaluations.  (Helt Aff. ¶ 7.)

At one point during a disagreement, Helt told the plaintiff,
"This is not a place for you."  (Fisher Dep. 152.)  In June 2002,
Helt reprimanded the plaintiff for acting unilaterally and
speaking to attorneys and court personnel in contravention of
agency policy.  (Fisher Aff. ¶ 13.)  Whether Doyle was informed
of these incidents is unclear, but the plaintiff avers generally
that he "spoke with [Doyle] each time [Helt] reprimanded [him]
for what she considered inappropriate contact with attorneys and
Judges in the Juvenile Court."  (Fisher Aff. ¶ 9)

The plaintiff's relationship with Helt was very upsetting to
him.  He often complained to Doyle about Helt's autocratic style,
her lack of respect for his views, and the stress and unhappiness
he suffered as a result.  (See Fisher Dep. 151-57, 162.)  Doyle
also knew that Helt wanted the plaintiff to leave the Torrington
office. (Fisher Aff. ¶ 9.)  Plaintiff trusted Doyle to resolve
the situation.  (Fisher Dep. 155-56.)

In the fall of 2002, Doyle informed the plaintiff that he
would not have to continue to deal with Helt because he would
report to a Waterbury supervisor and handle exclusively FWSN
cases.  (Fisher Aff. ¶ 7.)  Plaintiff understood Doyle to mean

4

that, although he would be reporting to a supervisor in the Waterbury office, he would be able to continue to work out of the Torrington office, which he strongly preferred.  (Fisher Dep. 159.)  He soon realized, however, that he was expected to work out of the Waterbury office and thus had been effectively transferred to that office against his will.  (Fisher Aff. ¶¶ 11-12.)  Helt played no role in this transfer. (Fisher Dep. 190; Helt Aff. ¶ 23.)

Plaintiff subsequently received adolescent cases.  (Fisher Dep. 15.)  He objected to these assignments on the ground that Doyle had promised him exclusively FWSN cases.  Doyle responded by accommodating plaintiff's request to be relieved of adolescent cases.  (Doyle Aff. ¶ 10; Fisher Dep. 15, 166.)

The transfer to Waterbury did not affect plaintiff's pay or benefits.  (Estrella Aff. ¶ 12.)  He continued to receive all upward salary adjustments for which he was eligible.  (Estrella Aff. ¶ 16; Fisher Dep. 20.)  Nonetheless, he felt that the transfer hurt his career because (1) he had built strong relationships with the community, service providers, and courts in Torrington, (2) he felt humiliated by the transfer, and (3) Torrington employees seemed to shun him.  (Fisher Aff. ¶ 27.)  The transfer also interfered with his ability to bike and run in Torrington, which he had become accustomed to doing on a regular basis.  (Fisher Dep. 175.)

5

II.  Discussion

Summary judgment may be granted only when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party has the burden of showing that no genuine issue of material fact exists, and all reasonable inferences must be drawn in favor of the nonmoving party.  Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).  Once the moving party has demonstrated the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and point to evidence in the record showing that there is a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  A party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986).

To prevail on a First Amendment retaliation claim, a public employee must establish that (1) he engaged in constitutionally protected speech, and (2) subsequently suffered an adverse employment action, which (3) was motivated at least in part by an intention to retaliate against him for engaging in the protected speech.  Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999). Plaintiff claims that Doyle transferred him because of his communications with persons outside DCF's Torrington office in

6

the three incidents described above.[4]  Defendants, in moving for summary judgment, argue that plaintiff cannot prove a violation of his First Amendment right to be free from retaliation for engaging in protected speech and that they are entitled to qualified immunity.  After careful review of the record, I conclude that a reasonable jury could not find in favor of the plaintiff on the third element of his retaliation claim.

Defendants argue that plaintiff's speech in the three incidents at issue was not constitutionally protected because he communicated as an employee of DCF on matters he was working on at the time, rather than as a citizen on matters of public concern.  This argument has some force.  See Ceballos v. Garcetti, 361 F.3d 1168 (9th Cir. 2004), cert. granted, 543 U.S. 1186 (2005).[5]  However, the Second Circuit has made it clear that, "[a]s a general rule, [a public employee's] speech on 'any matter of political, social, or other concern to the community' is protected by the First Amendment."  Mandell v. County of Suffolk, 316 F.3d 368, 383 (2d Cir. 2003) (quoting Connick v. Myers, 461 U.S. 138, 146 (1983)).  How DCF functions in general,

---

[4]  Plaintiff makes general allegations of other protected speech.  (See Fisher Dep. 103; Fisher Aff. ¶ 29.)  Significantly, however, neither his deposition testimony nor his affidavit identifies any other incidents of protected speech.

[5]  The Supreme Court reheard oral argument in this case on March 21, 2006.  See Garcetti v. Ceballos, No. 04-473, 126 S. Ct. 1294 (Feb. 17, 2006) (restoring the case to the calendar for reargument).

or in specific instances, are matters of potentially great concern to the people of Connecticut.  Accordingly, giving plaintiff the benefit of the doubt, I assume for present purposes that he can satisfy this element of his claim.

Whether the transfer to Waterbury qualifies as an adverse employment action is also doubtful.  In the context of public employee First Amendment retaliation claims, an adverse employment action is one "that, objectively, would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." Morrison v. Johnson, 429 F.3d 48, 51 (2d Cir. 2005) (internal quotation marks omitted).  A lateral transfer that does not result in a change in pay or benefits is unlikely to satisfy this objective standard unless "it alters the terms and conditions of the plaintiff's employment in a materially negative way." Patrolmen's Benevolent Ass'n of the City of N.Y. v. City of N.Y., 310 F.3d 43, 51 (2d Cir. 2002); see, e.g., Bernheim v. Litt, 79 F.3d 318, 325 (2d Cir. 1996).

It is undisputed that plaintiff's transfer to Waterbury entailed no material change in title, responsibilities, salary, or benefits.  His objections to the transfer are primarily subjective in nature.  In view of this, Doyle might well be entitled to summary judgment based on plaintiff's inability to satisfy this element of his claim.  But the plaintiff contends

8

that he did not want to go to Waterbury for reasons that were important to him (see Fisher Dep. 163), and he might be able to prove that Doyle (and others in the Torrington office) knew this. In that event, whether his involuntary transfer would have a chilling effect on a person of ordinary firmness in his situation could present a jury issue.  Accordingly, I will assume he can satisfy this element of his claim as well.

Plaintiff's claim fails on the third element because the evidence in the record is clearly insufficient to support a reasonable finding that the speech at issue was a motivating factor for the transfer.  At the summary judgment stage, a plaintiff must identify affirmative evidence to support this element.  See Crawford-El v. Britton, 523 U.S. 574, 600 (1998) ("[T]he plaintiff may not respond simply with general attacks upon the defendant's credibility . . . ."); Morris, 196 F.3d at 111 ("Plaintiffs . . . must offer . . . some tangible proof to demonstrate that their version of what occurred [is] not imaginary.").  Retaliatory motive may be proven by direct or circumstantial evidence.  Mandell, 316 F.3d at 383.  The fact that an adverse action is taken soon after the plaintiff engages in protected speech can constitute circumstantial evidence of retaliation.  See id. at 384 ("It makes logical sense that if an employer wishes to retaliate by firing an employee, he is likely to do so soon after the event.").  Conversely, in the absence of

9

direct evidence of retaliation, the fact that a significant period of time has lapsed between the speech and the challenged action militates against an inference of a causal connection. See, e.g., Garcia v. S.U.N.Y. Health Scis. Ctr., 280 F.3d 98, 107 (2d Cir. 2001) (thirteen months); Morris, 196 F.3d at 113 (two years).

In Mandell, 316 F.3d 368, the Second Circuit found sufficient evidence of retaliatory animus following a police officer's protected speech when (1) he was expelled by the Patrolmen's Benevolent Association for having "branded the entire department as racist," (2) he received a negative evaluation referencing the speech that recommended that his attitude be taken into account in future assignments, (3) the police chief (who later played a role in the adverse action) told him that he would have to learn to keep his mouth shut, and (4) five years after the speech, the police chief told him that his career might be impaired because of the "baggage" created by his speech. Id. at 383-84. The Second Circuit found such evidence sufficient to support an inference of retaliatory animus, notwithstanding a substantial time lapse, because the plaintiff offered direct evidence of animus and the record suggested that decisionmakers harbored negative attitudes toward the plaintiff during that time. Id. at 384. Moreover, the court distinguished the case, involving a failure to promote, from the typical termination

10

scenario, observing that an employer who desires to retaliate by terminating an employee would be expected to do so immediately after the speech.   <u>Id.</u>

Plaintiff's evidence on this element of his claim pales by comparison.  When asked at his deposition to explain why he believed Doyle retaliated against him for his protected speech, plaintiff failed to draw any connection between the transfer and the speech (<u>see</u> Fisher Dep. 153-56), and none is identified in his memorandum in opposition to summary judgment.  Crediting plaintiff's testimony, it is unclear whether Doyle was even aware of the three incidents of speech on which plaintiff's claim is based.[6]  Assuming Doyle was aware of them, the incidents occurred approximately two years before the transfer, and there is no evidence that he harbored retaliatory animus against the

_____

[6] The only evidence in the record that could support an inference that Doyle was aware of the three incidents is the general statement in plaintiff's affidavit that he spoke with Doyle each time Helt reprimanded him for what she considered to be inappropriate contacts with attorneys and judges.  Fisher Aff. ¶ 9.  This statement is in tension with the plaintiff's deposition testimony.  At his deposition, plaintiff testified that he could not recall whether he complained to Doyle.  (Fisher Dep. 129, 131.)  In view of the fact that plaintiff's claim against Doyle is predicated on the three incidents (and Doyle's alleged reaction to them), a strong argument can be made that the plaintiff is bound by his deposition testimony and cannot avoid summary judgment by proffering a seemingly conflicting statement such as the one contained in his affidavit, particularly since he offers no evidence that anyone else informed Doyle of the three incidents, or that Doyle ever referred to them in any way.  <u>See</u> <u>White v. ABCO Eng'q Corp.</u>, 221 F.3d 293, 304 (2d Cir. 2000) ("[I]t is generally accepted that a later affidavit may not supersede a prior deposition . . . .").

plaintiff during that long interval.  To the contrary, after the three incidents on which plaintiff relies, Doyle signed off on evaluations rating plaintiff's performance as "satisfactory" and "good" without making any reference to any of the three incidents.  In addition, plaintiff's deposition testimony strongly implies that Doyle respected the plaintiff's views and seemed happy with the plaintiff's work. (Fisher Dep. 153.)

In addition, plaintiff's own submissions point strongly to a different motive for the transfer -- a desire to put an end to disruption caused by the plaintiff's conflicts with Helt.  Plaintiff's deposition testimony makes it clear that his relationship with Helt was so bad that one of them had to go.  (Fisher Dep. 172-74.)  Consistent with his testimony on this significant matter, he affirmatively argues that "it was an accumulation of disagreements between Fisher and Helt which prompted Doyle to move [him] to Waterbury."  (Pl.'s Resp. to Mot. for Summ. J. 7.)  Indeed, he testified at his deposition that Doyle could have -- and should have -- resolved the problem giving rise to this case simply by transferring Helt.[7]  (Fisher Dep. 174.)

---

[7] In light of plaintiff's own submissions concerning his relationship with Helt, a jury would be bound to find that Doyle's decision to transfer him out of the Torrington office was objectively reasonable.  Though not in itself dispositive, this further undermines plaintiff's claim that the decision was unlawful.

Ultimately, plaintiff's showing on the issue of Doyle's retaliatory intent boils down to this:  Helt reprimanded the plaintiff in June 2002 for speaking to attorneys and court personnel; the plaintiff might have spoken with Doyle about the reprimand; Doyle transferred the plaintiff to the Waterbury office a few months later; Helt had no involvement in, or input into, Doyle's decision; but Doyle knew Helt wanted the plaintiff to leave the Torrington office.  On its own, this showing is insufficient to sustain plaintiff's burden of proof.  When considered in light of the lapse of nearly two years between the speech at issue and the transfer, and plaintiff's own testimony that his acrimonious relationship with Helt required that one of them be transferred, it is manifestly insufficient.  Accordingly, Doyle is entitled to summary judgment.

III. <u>Conclusion</u>

For all the foregoing reasons, defendants' motion for summary judgment [Doc. #41] is hereby granted.  The Clerk will enter a judgment in favor of the defendants dismissing the complaint with prejudice.

So ordered.

Dated at Hartford, Connecticut this 30th day of March 2006.


_____/s/_____
        Robert N. Chatigny
    United States District Judge

13